HOUSEHOLD SEWING-MACHINE CO. *v.* VAUGHAN *et al.*

(*Supreme Court, General Term, Fifth Department.* June, 1888.)

CONVERSION—OF PERSONAL PROPERTY INTO REALTY—RIGHTS OF CREDITORS.

> In 1864 the mother and grandfather of an infant who lived with them, and had no general guardian, executed a deed purporting to convey to the wife of one V. certain land of the infant, in consideration of $1,250; $200 cash, and the remainder secured by a bond, most of which was paid after the death of the wife. The wife entered into possession, and after her death the husband continued in possession. In 1870 the children of his deceased wife executed to him a quitclaim deed of the premises. Afterwards the grandfather of the infant was appointed special guardian, with authority to sell the land in question; and for the consideration which had already been paid, and was held by him for the infant, executed a deed of the premises to the second wife of V. *Held,* that a creditor of V. could not reach the land, nor a fund arising from its sale, on the ground that the consideration paid for the original conveyance became a trust fund for the benefit of the first wife, which by equitable conversion became real estate, and descended to her children, one of whom had since died, and his interest descended to his father, V.

Appeal from special term, Monroe county.

Appeal by the plaintiff from a judgment entered on the findings and decision of a judge, dismissing the complaint, with costs against the plaintiff and certain of the defendants. The facts, about which there is no dispute, as found by the court, are as follows: In 1832 the defendant, Richard F. Vaughan, intermarried with one Mary E. Bradley, with whom he lived as his wife from the marriage until her death, July 28, 1865; leaving issue of such marriage the defendants George W. Vaughan and Elizabeth Shelp, and a son, Robert Vaughan, who afterwards married the defendant Anna Vaughan, and died September 13, 1883, intestate, without issue. May 2, 1864, one Charles O. Link, an infant, who had no general guardian, and who resided with his mother, Elizabeth Link, and his maternal grandfather, Matthew Ottman, at Sharon, Schoharie county, N. Y., was the owner in fee, as heir of his deceased father, of lots 20 and 21, section D, Jones' tract, in Rochester, N. Y., subject to the unadmeasured dower of his mother therein. On or about said 2d day of May the defendant Richard F. Vaughan bargained with Matthew Ottman for the purchase of the lots for the price of $1,250, $200 down, and the balance in his bond, to be secured by a mortgage on the premises; and Matthew Ottman and Elizabeth Link executed and delivered to Richard F. Vaughan a deed, with covenants of warranty, purporting to convey the premises to Mary E. Vaughan, the wife of Richard F., and receive therefor from him $200 cash, and his bond conditioned for the payment of the balance of the purchase price, and a mortgage of the premises, executed by his wife and himself, conditioned to secure the bond; which bond he afterwards paid, mostly after his wife's death. After the delivery of the deed, Mary E. Vaughan entered into possession of the premises, and resided thereon with her husband until her death,—all the parties supposing she had title to the said premises under such deed; and Richard F. continued in possession, and has ever since resided on the same, except the portion subsequently sold. July 26, 1870, the defendants Elizabeth Shelp, and George W. Vaughan and his wife, and said Robert Vaughan, executed and delivered to their father, the defendant Richard F. Vaughan, a quitclaim deed of the premises, which deed was never recorded. November 19, 1869, defendant Richard F. Vaughan

intermarried with Mary E. Longfellow, with whom he has since lived on the premises, and who is the defendant Mary Ellen Vaughan.   August 22, 1870, proceedings were instituted before the county judge of Monroe county, on the petition of Charles O. Link and Elizabeth Link, to sell the infant's interest in the premises, and Matthew Ottman was appointed special guardian to sell such interest.   October 15, 1870, Matthew Ottman, as such special guardian, under the direction of the county judge, executed, acknowledged, and delivered to the defendant, Mary Ellen Vaughan, a deed dated that day, whereby he conveyed to her said lots 20 and 21; and on the same day Elizabeth Link executed and delivered to her a release of dower in said premises.   Said deeds were both recorded October 31, 1870.   The consideration for such conveyance was the same, $1,250, which Richard F. Vaughan had paid Matthew Ottman for the deed to his first wife; all of which had been paid, and which Ottman held for the infant.   On receiving such deeds Mary Ellen Vaughan entered into possession of the land with her husband, and has been in possession thereof since, except a portion thereof since sold by her, and for which she received the pay.   July 2, 1885, plaintiff recovered judgment against defendant Richard F. Vaughan in the supreme court for $2,568.54, which was docketed in Monroe county clerk's office the same day, and upon which execution was issued on the same day to the sheriff of Monroe county, who afterwards returned the same wholly unsatisfied.   This action was commenced on or about October 16, 1886, to have the title to the said premises still held by the defendant Mary Ellen Vaughan, and the proceeds of that sold by her, adjudged to have been received and held by her in trust for George W. Vaughan, Robert Vaughan, and Elizabeth Shelp, as children and heirs at law of Mary E. Vaughan, deceased; and that, upon the death of Robert Vaughan, his share, one-third of such property subject to the dower rights of his wife, Anna Vaughan, vested in the defendant Richard F Vaughan; and to have the said one-third applied to the payment of plaintiff's judgment, and costs.

*E. F. Wellington*, for appellants.   *G. T. Parker*, for respondent.

DWIGHT, J.   By the deed from the mother and the grandfather of the infant Link all parties seem to have supposed that title passed to the lands in question.   That title Richard F. Vaughan, the purchaser, intended to confer upon his wife, Mary E., and therefore procured the deed to be made direct to her.   There seems to be no foundation for the theory of the plaintiff that he intended to give to her the money which was the consideration of the supposed purchase; or that, because he failed to procure for her title to the land, the money paid by him became a fund for her benefit and that of her children.   His intention was to give her the land, and he supposed he had done so.   He paid a small portion of the consideration down, and gave his bond for the portion unpaid, and he and his wife took possession of the premises as her property.   On her death, which occurred a year later, he remained in possession, as he supposes, as tenant by the curtesy; he continued to make the payments on his bond as they became due; and, five years after the death of his wife, took a deed from his children of all their interest in the property.   Then he evidently considered himself the owner in fee of the entire estate; and so he was as to the heirs of his wife, and all the world, except the infant Link, whose estate in fee had never been divested.   This he soon discovered.   The full consideration of $1,200, which he had paid, remained in the hands of Ottman, the grandfather of the infant owner, who had assumed to act for the infant.   The fact was recognized that Vaughan had taken nothing by his purchase (beyond a possible right of action for the admeasurement of dower) except the use of the land; and, as against that, the infant owner had had the benefit of the use of the money.   Thereupon Ottman and Mrs. Link set about making good the transfer of title, which they had previously attempted to make, for the consideration already paid; and to that end they took pro-

ceedings in the county court, which resulted in the conveyance by Ottman, as special guardian for the infant, of the latter's interest in the real estate in question, for the $1,200 already in the guardian's hands. Mr. Vaughan having in the mean time married another wife, the defendant Mary Ellen Vaughan caused the new deed to be made to her.

It is impossible to find in this statement of the case any foundation for the plaintiff's claim to enforce a trust in favor of the creditors of Richard F. Vaughan in the lands so conveyed to the defendant Mary Ellen Vaughan. The theory of this claim seems to be that the fund paid by Richard F. Vaughan to Ottman, and which finally became the consideration for the conveyance to Mary Ellen Vaughan, was the property of the first wife; that, by "equitable conversion," it had become real estate, and, upon her death, descended as such to her three children; that when the conveyance was made to Mary Ellen, in consideration of that fund, she took the title in trust for the children of the first wife; that when Robert, one of the children, died intestate and without issue, his share and interest descended to his father; and that so much of the estate is now held in trust for him. This proposition cannot be maintained. The money never was the money of the wife. It was her husband's money, and, when paid to Ottman and Mrs. Link, it became theirs. It was not obtained by them by fraud, nor paid to them under any mistake of fact, and it could not have been recovered back either by husband or wife. The only claim that Mrs. Vaughan could ever have enforced against her grantors was under their covenant of warranty, and that only in case of eviction. She was never evicted, but died in possession of the property. At that time only $200 of the consideration had been paid, and the remaining $1,000 and interest was afterwards paid by the husband for his own benefit. But it is clear that the wife never had any interest in any part of this fund, and no interest in it passed to her children, either as heirs at law or next of kin. And this may well be the end of the discussion, since it is the end of the theory upon which the plaintiff and the defendants, other than Richard F. Vaughan and his wife, seek to found their claim. If, under any possible theory of the case, any estate or interest in the land passed to the children of the first wife, it also passed from them by their quitclaim deed to their father. The final disposition of the fund and of the title was very simple and consonent with equity and good conscience. Ottman, recognizing the moral obligation to make good to Vaughan the purchase of the land for which he had paid, and still having the fund in his hands, was willing (with the consent of Mrs. Link) to account to Vaughan for the money in the new contract of purchase and sale made under the direction of the court. And so the matter was concluded. The infant owner and the doweress got the money, and the purchaser, at last, procured the title to the land to be conveyed to his appointee; in all of which no trust resulted in favor of the heirs of the first wife, nor of creditors (since at that time there were no creditors) of the party paying the consideration.

The judgment should be affirmed, with costs.

All concur.